IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KECIA E. PORTERFIELD                                                                       PLAINTIFF

v.                                          4:18cv00878-BSM-JJV

NANCY A. BERRYHILL,
Acting Commissioner of Social Security                                                     DEFENDANT

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

This recommended disposition has been submitted to Chief United States District Judge Brian S. Miller. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than fourteen (14) days from the date of the findings and recommendations. A copy must be served on the opposing party. The district judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

## RECOMMENDED DISPOSITION

**I.     INTRODUCTION**

Kecia E. Porterfield ("Plaintiff") has appealed the final administrative decision of the Commissioner of Social Security to deny her claim for a social security income and disability insurance benefits. (Doc. No. 3.) Both parties have submitted appeal briefs (Doc. Nos. 14, 17), and the case is now ready for a decision.

This review function is extremely limited. A court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole

and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, courts must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; a court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The history of the administrative proceedings and the statement of facts relevant to this decision are contained in the respective briefs and are not in serious dispute. Therefore, they will not be repeated in this opinion except as necessary. After careful consideration of the record as a whole, I find the decision of the Commissioner should be affirmed.

## II. ANALYSIS

Plaintiff was fifty-two at the time of the most recent administrative hearing. (Tr. 987.) Her insurance will run through December 31, 2019, so Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. (Tr.8.) Plaintiff testified she earned an associate degree. (Tr. 987.) She has past relevant work as a customer service representative, receptionist, and accounts payable/receivable clerk. (Tr. 968.)

The Administrative Law Judge[1] ("ALJ") found Plaintiff had a combination of "severe" impairments, including: fibromyalgia, gastrointestinal issues related to Chron's disease and/or

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed

irritable bowel syndrome, major depressive disorder, and generalized anxiety disorder. (Tr. 947.) The ALJ found Plaintiff did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.[2] (Tr. 948-949.) However, fibromyalgia, one of Plaintiff's most severe symptoms, is not a listed physical impairment within the context of the Act. (Tr. 948.)

The ALJ assessed that Plaintiff has the residual functional capacity (RFC) to perform a reduced range of light work. (Tr. 950.) Based on this finding, the ALJ determined Ms. Porterfield could no longer perform her past relevant work. (Tr. 968.) However, utilizing the services of a vocational expert, (Tr. 1007-1011), the ALJ concluded that Plaintiff could perform other jobs that exist in the national economy – namely housekeeper and price tag ticketer. (Tr. 969.) Accordingly, the ALJ determined Plaintiff was not disabled. (Tr. 950.)

In support of her Complaint, Plaintiff argues the ALJ erred by failing to evaluate or consider the reported global assessment of functioning ("GAF") scores of record. (Doc. No. 14 at 12-14.) Plaintiff experienced periods of time where her GAF score would remain below 50 for several consecutive months. (Doc. No. 14 at 13.) From January 27 to September 17, 2015, her GAF score was consistently rated as 45. (Tr. 711, 886.) During this time, Plaintiff was diagnosed with and treated for major depressive disorder and obsessive-compulsive disorder by Tara Smith, LAC, and Sharon Curtis, M.D. (Tr. 711, 717, 729-738, 821-886.) Her GAF score, however, did not change. (*Id.*) Since the ALJ did not take Plaintiff's GAF score as a direct indicator of a disability, Plaintiff argues that the case should be reversed and remanded. (Doc. No. 14 at 14.)

---

impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).
[2] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

I have carefully considered Plaintiff's argument but find it to be without merit. Because the GAF scale is a tool used by mental health professionals to determine proper treatment options, it is not perfectly suited to determine a petitioner's disability status under the Act. *Halverson v. Astrue*, 600 F.3d 922, 930-931 (8th Cir. 2010). While an ALJ is not able to completely overlook GAF scores in the disability assessment process, a GAF score below 50 is still not an automatic indicator of disability. *See Pate-Fires v. Astrue*, 564 F.3d 935, 944-45 (8th Cir. 2009); *Jones*, 619 F.3d at 973-74. GAF scores in the mid-40s to low-50s are not necessarily dispositive and "an ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." *Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010)(citation omitted).

As noted in her brief, the Commissioner has declined to endorse the use of the GAF Scale, observing that the GAF Scale did not have a direct correlation to the severity requirements in the mental disorder Listings. *See* 65 Fed. Reg. 50746, 50764-65 (August 21, 2000). Measuring mental impairments on a numerical scale is difficult. DSM-IV-TR cautions:

> DSM-IV is a classification of mental disorders that was developed for use in clinical, educational, and research settings. The diagnostic categories, criteria, and textual descriptions are meant to be employed by individuals with appropriate clinical training and experience in diagnosis. It is important that DSM-IV not be applied mechanically by untrained individuals. The specific diagnostic criteria included in DSM-IV are meant to serve as guidelines to be informed by clinical judgment and are not meant to be used in a cookbook fashion.

*Id.* xxxii.

The GAF, by itself, does not rise to the level of a medical opinion that the ALJ must address. It is no more significant than any of the other axes of the multiaxial assessment.

In support of her position, the Commissioner points to the consultative examination performed by Nicholas Rios, Psy.D. (Tr. 695-699.) Dr. Rios concluded that Ms. Porterfield would

have "moderate difficulties interacting and communicating in a socially appropriate manner" but her "capacity to communicate in an intelligible manner seemed within normal limits." (Tr. 699.)

He further concluded:

> Despite the claimant having near Average intellectual abilities, she may have mild to moderate difficulties coping with basic work tasks, given her difficulties with affective regulation and physiological arousal. The claimant demonstrated at least mild difficulties with attending and sustaining concentration on basic tasks during the interview, however, the tasks with which she attended to were brief and administered in a one on one setting, free from the typical distractions of a work setting. She also demonstrated adequate persistence. Given her history and intellectual abilities, the claimant's ability to complete work-related tasks within an acceptable time frame may be mildly limited.

(Tr. 699.)

It is without question that Dr. Rios found limitation. But in formulating Plaintiff's mental RFC, the ALJ assessed, "[Ms. Porterfield] could perform work where interpersonal contact was only incidental to the work performed; the complexity of tasks were [sic] learned and performed by rote with few variables and little judgment; and the supervision required was simple, direct, and concrete." (Tr. 950.) I agree with the Commissioner that the ALJ's assessment is fairly consistent with Dr. Rios's conclusions.

When examined by Dr. Rios, Plaintiff met all major criteria for major depressive disorder and possibly post-traumatic stress disorder. (Tr. 698.) However, Plaintiff has mild to moderate difficulties in coping with basic work tasks. (Tr. 699.) These difficulties do not appear to preclude all forms of work-related activities. And treatment notes support the ALJ's determination that Plaintiff's symptoms are largely situational and are overall controlled by medication. (Tr. 967, 1534, 1589-90, 2056, 2083-87, 2106.) A condition controllable by medication or treatment cannot be considered disabling. *Schultz v. Barnhart*, 479 F.3d 979, 983 (8th Cir. 2007).

Therefore, the evidence of record supports the ALJ's determination that Plaintiff can perform unskilled work, understand, follow, and remember concrete instructions, and maintain superficial contact with others. Because of this, I find the ALJ's decision supported by substantial evidence on this point and Plaintiff's argument regarding the dispositive nature of her GAF score to be unavailing.

Plaintiff also argues the ALJ erred in evaluating her RFC. (Doc. No. 14 at 14-22.) As previously recited, the ALJ found that Plaintiff retained the RFC for a reduced range of light, unskilled work. (Tr. 969.) This determination was based on the controlled nature of her impairments and her occasional ability to stoop, kneel, crouch, and crawl. (Tr. 965.) Under this classification, Plaintiff could do jobs such as housekeeper and price tag ticketer, and she was not rendered disabled under the Act. (*Id.*)

Plaintiff argues that, based on her medical history her RFC should be limited only to sedentary, unskilled work. (Doc. No. 14 at 21, 22.) Under this classification, Plaintiff would not be able to perform her past relevant semi-skilled to skilled work and would be considered disabled under the Act. (*Id.*)

After careful review of the record, I find the ALJ's RFC assessment is supported by substantial evidence, including medical reports, courses of treatments, physicians' assessments, and Plaintiff's self-reported daily activities. (Tr. 952-968.)

While Plaintiff was diagnosed with fibromyalgia[3] in May of 2017, she was prescribed Gabapentin and Ultram and generally had no issues. (Tr. 962-963, 767-769, 771-774, 1706-1708, 1847-1848, 1950, 1957, 1966.) Additionally, upon physical examination, Plaintiff had a normal

---

[3] I do recognize that fibromyalgia is a chronic condition that is usually diagnosed after eliminating other conditions and no confirming diagnostic tests exist. It can be disabling. Yet, I am simply unable to find support in the record to merit reversal of the ALJ's decision on this basis.

6

gait and 5/5 strength, showing that with some relief from her symptoms, she had the ability to occasionally stoop, kneel, crouch, and crawl, and the frequent ability to handle, finger, and feel bilaterally. (Tr. 963.) Plaintiff was also advised to engage in "aquatics/stretching exercise[s] at least 3 [times per week] to alleviate her fibromyalgia symptoms. (2021.) Also, the medical evidence is replete with recommendations (and her professed desire) to engage in exercise. Therefore, I am unable to conclude Ms. Porterfield is precluded from all forms of work.

Plaintiff also contends that her gastrointestinal impairments make it impossible for her to perform light work. This argument, however, is also unconvincing. As of May 2017, Plaintiff was diagnosed by her primary care physician with abdominal pain, colitis, and gastroesophageal reflux disease. (Tr. 1966-1967.) Plaintiff began taking two medications - Cipro and Flagyl - which alleviated her colitis symptoms. (*Id*.) Plaintiff was later referred to a gastroenterologist for evaluation regarding the remainder of her ongoing gastrointestinal issues. (Tr. 1946.) However, it appears Plaintiff never followed up with this referral.

Plaintiff also argues her past knee injury makes light work impossible. However, after a successful arthroscopic surgery, Plaintiff's knee was generally repaired, and the ALJ could correctly determine she could perform a light level of physical exertion with the occasional ability to stoop, kneel, crouch, and crawl. (Tr. 965, 1997, 2117-2122.) The ALJ also fairly considered Plaintiff's obesity and found that it did not affect Plaintiff's ability to perform light work. (Tr. 966.)

Finally, while I recognize Diane Kogurt, Ph.D., Kevin Santulli, Ph.D., Ronald Crow, D.O., and Rita Allbright, M.D., did not actually examine Ms. Porterfield, their opinions are still consistent with the overall medical evidence and, therefore, constitute substantial evidence in support of the ALJ's decision. (Tr. 74-77, 87-89,113-118, 967.) All gave professional opinions

7

based on their careful review of Plaintiff's medical records and concluded Ms. Porterfield was not disabled. Their evaluations support the ALJ's conclusion Ms. Porterfield is capable of doing light, unskilled work. (*Id.*)

Plaintiff has advanced other arguments that I have considered and find to be without merit. I find no basis to reverse the ALJ's decision here.

### III. CONCLUSION

Overall, I find Plaintiff's GAF score to be another piece of evidence in this case, rather than a deciding factor. I find the ALJ's analysis of the GAF score to be fair and proper and affirm the conclusion that a GAF score under 50 is not a direct indicator of disability. Furthermore, Ms. Porterfield clearly suffers from some level of pain and limitation. But after carefully considering the ALJ's opinion, the medical record, and the briefs from the respective parties, I find that the ALJ's opinion is supported by substantial evidence.

I am sympathetic to Ms. Porterfield's claims, and find this to be a somewhat close case. Plaintiff's counsel has done an admirable job advocating for Ms. Porterfield's rights here. However, I am unable to find reversible fault in the ALJ's opinion. The ALJ carefully considered the record and made a supported determination that Plaintiff was capable of performing light work. In coming to this conclusion, the ALJ considered the medical records and the opinions from medical professionals. And in his opinion, the ALJ fairly set out the rationale for his conclusions.

I have reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case, and the Commissioner's decision is not based on legal error. *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).

IT IS, THEREFORE, RECOMMENDED that the final determination of the Commissioner be affirmed, and Plaintiff's Complaint be dismissed with prejudice.

DATED this 21st day of June 2019.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE